SUE<br>v.<br>VIOLA.

## CLARKE v. SALOY et al.

Where the laborers employed by a builder, and the furnishers of materials for its construction, deliver to the owner attested accounts of the amount due to them for the purpose of having the amount retained out of subsequent payments to the contractor, in pursuance of the stat. of 18 March, 1844, and the amounts so claimed exceed the balance due to the builder, the owner may institute an action against the claimants, for the purpose of having the amount due by him distributed by order of court among the parties entitled thereto, and himself relieved from liability on depositing the amount due by him in court.

APPEAL from the First District Court of New Orleans, *McHenry*, J. *Fulhouze*, for the plaintiff. *Mazureau*, for the appellant. The judgment of the court was pronounced by

SLIDELL, J. The petition in this cause alleges the following facts: The plaintiff had made a contract with one *J. Chateau*, by the terms of which he was to build a house for the plaintiff, and the plaintiff was to pay a sum in cash, and the residue in two instalments. This contract was, with the consent of the plaintiff, assigned by *J. Chateau* to *R. Chateau*, who, at the stipulated stage of the work, received the second instalment. In the subsequent prosecution of the work, the contractor became embarrassed, and did not fulfil his contract; the plaintiff was compelled to have some portions of the work finished by other persons. Various parties, who had claims against *Chateau* as under-workmen and furnishers of materials, delivered to the plaintiff attested accounts, pursuant to the statute of 18 March, 1844. These claims amounted to $1,471 72, while the amount coming to the contractors from the plaintiff was but $720. The plaintiff further alleged that each of these creditors of the contractor claimed the right of payment in full, that she had no knowlege of the justice or correctness of their claims, was unable to decide upon their respective rights and privileges, and could not pay any of them without the risk of error and responsibility towards the others. She therefore prayed the citation of all these creditors, and thal the fund which she deposited in court might be distributed among them according to their respective rights, and she discharged from all further liability.

To this petition an exception was filed by *Saloy*, one of the creditors, praying the dismissal of the action, upon the ground that the plaintiff, according to her own showing, stands toward him in the relation of his debtor, and not his creditor; that she has no claims against him, and has nothing to do with the conflict, if any exist between the several defendants; that she cannot interfere nor cause them to be called, and decreed to come to a settlement of their respective claims. This exception was overruled. Judgment by default was entered, and, upon the evidence adduced, the court being satisfied that the allegations of the petition were fully proved, rendered a decree directing that the fund deposited remain for distribution among the creditors upon further hearing, dis-

charging the plaintiff from all personal liability under the building contract, and authorising the cancellation of the privilege at the mortgage office. From this judgment *Saloy* has appealed.

We concur with the court below in the opinion that the allegations of the petition were proved, and our attention will be addressed to the exception pleaded by the defendant. In solving the question whether such an action can be maintained, our inquiry ought not to be limited by the literal provisions of the Code of Practice. Whether the definition of an action contained in the first article of that Code literally covers a case of this nature, seems to us of but little importance. If any provision of law could be cited forbidding such an action, we should be bound to obey it, however questionable its policy; but, in the absence of such a prohibition, the true test is, whether the ends of justice, for the administration of which courts were established, will be promoted and accomplished by the maintenance of this action. In answering this enquiry it is necessary to consider the situation of the parties; we may also take into view, in a case where the legislator is silent, such analogies as are presented by our legislation, and may gather assistance from the practice of courts of justice in other civilized countries.

Here are numerous creditors, who, availing themselves of the provisions of the act of 1844,have notified their accounts to the plaintiff, and thus given her warning that whatever she owes the contractor must be retained and paid over to them. These conflicting claims may presently become the subject of as many different suits against her, in as many different courts: for the statute has given an action to the creditor of the contractor against the owner, as "for money had and received to his use." The claims amount to $1,471 20, while all that she owes to the contractor, and the full extent to which she ought in law or honesty to be made liable, is $720. She is willing and anxious to pay all that she owes; but does not know to which of the claimants, or in what proportions, she ought of right to render the debt; and fears that she may be harrassed by a multiplicity of suits, and suffer injury from the conflicting claims of the parties. She therefore applies to a court of justice to protect her, not only from being compelled to pay the same amount repeatedly to the different claimants, but from the vexations attending upon the numerous suits which would be instituted against her. She places the fund of which she is the stakeholder in the hands of the court, and insists that the various claimants should settle their rights contradictorily with each other, and not at her expense and hazard. There is an obvious justice in this; and we look in vain, either in the general law, or in the statute of 1844, for any thing which forbids such a proceeding. It certainly was not the object of that statute to oppress the proprietor, but to aid and protect the mechanic. When the proprietor comes forward honestly and places the fund at the disposition of the creditors, he has done all that the statute contemplated.

There is a strong analogy between the present action and the remedy which positive legislation has provided in the case of conflicting seizures. Act of February 10, 1841, sec. 11.

The Spanish law by which we were once governed, presents provisions strongly analogous to the present case. In the Partidas, that venerable monument of wisdom and simplicity, it is said: "Constreñido non deve ser ningun ome, que faga demanda a otro, mas el de su voluntad la deve fazer si quisiere; fueras ende en cosas señaladas, quel puedan los Juzgadores apremiar segun derecho, para fazerla. E la una dellas es, quando alguno se va alabando, e

diziendo contra otro, que es su siervo; o lo enfamando, diziendo del otro mal    <span style="float:right">CLARKE<br>*v.*<br>SALOY.</span>
ante los omes. Ca en tales cosas como estas, o en otras semejantes dellas,
aquel contra quien son dichas, puede ir al Juez del Logar, e pedir que constri-
ña a aquel que las dixo, que le faga demanda sobrellas en juizio, e que las prueve,
o que se desdiga dellas, o quel faga otra enmienda, qual el Juzgador entendiere
que sera guisada." Partida iii, tit. ii, ley 46.

Nay, so far did the same lawgiver go in protecting the subject from vexatious
litigation, that there was a provision enabling judges to compel those to bring
suits immediately, who might have claims against persons going on a journey.*

An action like the present is familiar to courts of chancery, under the deno-
mination of a bill of interpleader. Justice Story, in his treatise on Equity, sets
forth at length the considerations justifying such relief, which we have already
intimated, and adds that unless, under such circumstances, courts of equity
would afford a party protection, he would in almost every event be a sufferer,
however innocent and honorable his own conduct may have been. See also
*De Lizardi* v. *Gosset*, 1 Ann. Rep. 138. We are of opinion that the exception
was properly overruled, and that there is no error in the judgment appealed
from.                                                    *Judgment affirmed.*

---

* "Asechan los omes unos a otros maliciosamente, por emvidia, o por malquerencia que
han contra ellos. E esto fazen contra los mercaderes, o contra los otros omes, que han a
fazer sus viajes por mar, o por tierra. Ca luego que saben que tienen sus mercaderias, e
sus cosas aparejadas para irse, mueven demandas escatimosamente contra ellos ante los
Juzgadores, para estorbarles que se non puedan ir de la tierra, en la sazon que devian.
Onde dezimos, que los Juzgadores non deven sofrir tal escatima, nin tal engaño como este,
quando lo sopieran. E para refrenarlos desta maldad, mandamos, que el mercader, o otro
qualquier que se temiere desto, pueda pedir al Juez que apremie a aquel que le esta ase-
chando, quel faga luego su demanda, e que la non aluengue, fasta en la sazon que se quie-
re ir. E el juez develo fazer. Ca si estonce el demandador non quisiese su demanda
mover, non deve despues ser oydo, fasta que el demandado torne de su viaje." Partida,
iii, tit. ii, ley 47.