## School District No. 1 of Grand Haven v. Eleazer P. Weston and others.

*Bill of interpleader: School district: Contractor: Material-men, etc.: Conflicting claims: Trustees.* A school district having contracted for the building of a school-house, and the contractor, after progressing considerably with the building, and drawing large sums of money, having failed and become irresponsible, owing largely for material and labor for this school-house and otherwise, it was arranged that the contractor should be released from further

SCHOOL DISTRICT NO. 1 OF GRAND HAVEN *v.* WESTON.

liability on his contract, and that the school district should pay a specified sum at a future time specified on account of the work already done, to those to whom the contractor had given orders on the district, and to those having claims for material and labor furnished for the building, *pro rata*; before the money fell due, some of the material men commenced proceedings to enforce their claims as ·mechanics' liens against the school building and site; others sued the contractor and garnished the district; some presented their claims to the district and demanded pay in full, and others assented to accept their *pro rata* share; outside creditors, having procured judgments against the contractor, filed judgment creditors' bills, and enjoined the district from paying over the fund; and still others were threatening suits:—

*Held,* That the district under the circumstances sustains the relation of trustee or stakeholder, holding this fund for the benefit of those entitled under the arrangement between it and the contractor; and that a bill of interpleader will lie on its behalf·against those entitled to the fund, and those who have commenced proceedings against the district to have their claims satisfied out of it.

*Bill of interpleader: Payment.* The objection to this remedy, that the district had it in its power to relieve itself of all embarrassment by paying over the fund to the contractor to whom it owed it as a debt, is not well taken; for however this might have been before any of the.creditors entitled had signified their acceptance of the arrangement made in their behalf, and before any suits were commenced by others for their entire claims, it could not afterwards safely pay over the fund to the contractor; and there was no duty to pay to any one until the time fixed for payment, and before that time the complications had all arisen.

*Bill of interpleader: Conflicting claims: Identity.* It is not a valid objection to the remedy by interpleader in such a case, that the several claimants do not claim from the complainant the same debt, fund or duty, where though each is claiming part only of the same fund, yet all together claim an amount more than twice that of the fund; an absolute identity in the conflicting claims is not requisite.

*Equity jurisprudence; Stakeholders: Trustees: Conflicting claims.* Courts of equity are generally very liberal in protecting mere naked trustees or stakeholders against conflicting claims.

*Bill of interpleader: Submitting to suits and paying judgments.* The objection urged to this bill of interpleader, that the complainant would be completely protected by the judgments in the respective suits against it, by paying them in succession until the fund was exhausted, is not sustainable; "a party claiming no right in the subject is doubly vexed by having two legal processes going on against him in the names of different persons at the same time; he comes upon the most obvious equity to insist that those persons claiming that to which he makes no claim should settle that contest among themselves and not with him."

*Bill of interpleader: Another chancery suit pending: Determination of the whole controversy.* It is no objection to a bill of interpleader, that another suit in chancery is pending in which complainant is a defendant, especially where there is more than one such suit in equity pending, besides several at law, and such suit is one of the very grievances complained of, and where neither of the pending suits could determine the question of the rights of all the parties, or as to the whole fund.

*Bill of interpleader: One entitled to the whole fund.* While it is true as an abstract proposition, that a bill of interpleader will not lie where one appears to be entitled to the fund to the exclusion of all others, it cannot be contended that the contractor in this case, or any one of the claimants, is, under the circumstances, thus entitled.

*Heard October 15. Decided January 13.*

SCHOOL DISTRICT NO. 1 OF GRAND HAVEN *v.* WESTON.

Appeal·in Chancery from Ottawa Circuit.

*The bill in this case was in the nature of a bill of interpleader. It was demurred to by part of the defendants in the court below (the circuit court for the county of Ottawa in chancery), on the ground that "complainant, in said bill of interpleader, has not shown any claim or right, title, or interest whatever in these defendants or any of them, to the money mentioned in said bill, and has not made and stated such a case as doth or ought to entitle said complainant to the relief prayed for."

The demurrer, upon the hearing and argument, was sustained, and the bill dismissed, with costs against complainant. The complainant appeals to this court.

The case set forth in the bill is substantially this: the complainant (the school-district) in April, 1870, entered into a contract with one Potter for the erection of a school-house for said district. Potter commenced the building and continued with the work some time, drawing at various times from the building fund of the district, then in the hands of their building committee, large amounts, which he represented to be for labor and materials for said building, and continued so to draw from said fund until the committee refused to make further advances until he should have completed the building; whereupon, dissatisfaction having arisen between the parties, all matters connected with said work and contract were agreed by the parties to be referred for settlement to mutual friends chosen by them. The persons so selected by them decided and determined that Potter should from that date be discharged from any further obligation under the contract; that the district should pay thirty-three hundred dollars when the last payment mentioned in the building contract should become due; and this was then agreed upon by the parties as the amount yet unpaid and to become due from the district under the contract. And, as there were many debts and

---

*This statement of the case was furnished by Judge Christiancy.

claims against Potter in favor of various persons, for work, labor and material furnished him for said building, amounting in all to over seven thousand dollars; and he having, as he admitted, appropriated large amounts of the sums already drawn by him from said building fund, to other purposes foreign from said building; and having drawn orders upon said fund, which were at the time unpaid and not accepted by the committee (though several of them were filed with the director as secretary of the committee, but subject to the order of the owners), and it being understood by said committee, and said laborers and material-men, and admitted by Potter, that he was insolvent and unable to pay said debts and claims; it was, in view of these facts, agreed between said Potter and said district, that Potter should receive no part of said balance of three thousand three hundred dollars, but that the district should pay it over *pro rata* to the holders of said orders, and upon such other valid claims as should be found due from Potter for labor and material furnished him for said building.

But prior to the time when, by the terms of said settlement, the said thirty-three hundred dollars was to be paid (that is, prior to the time when by the contract the last payment was to become due), Weston, Dudley and Soule (three of the defendants), holding a claim of some seventeen hundred dollars for brick furnished Potter for this building, filed a mechanic's lien against said school-house and the school-house site, and filed a petition in the circuit court for the county of Ottawa in chancery, to enforce the same for the full amount, which suit had been pending until the last term prior to the filing of this bill, when the petition, however, was dismissed.

Garnishee proceedings were also commenced in the circuit court for the county of Kent, in behalf of creditors of Potter for claims other than those contracted on account of the school-house, in which complainant was obliged to appear and defend, but which have also since been dismissed.

: Immediately after said settlement, one Walter Cooper filed a mechanic's lien against said school-house and grounds, for material furnished Potter for the building for eight hundred dollars and upwards, and filed his petition in said Ottawa circuit, which is still pending.

A similar lien, in behalf of one Donker, for two hundred and fifty dollars, has been filed in the same court, and is still pending.

The creditors of Potter, whose claims originated on account of said school-house, are numerous, and their respective claims vary in amount. The bill states that complainant has ascertained the names of the following claimants, who have presented their respective claims to said building committee for payment, some of whom claim the full amount of their respective claims, others, their *pro rata* share (giving the names of twenty such claimants, who are made the defendants); that there are numerous other claimants, as complainant believes, whose claims are equally sacred as those named, and complainant believes their names and residences may be discovered under the order of the court.

Gouldsborough & McLouth, the bill further states, recovered a judgment against said Potter, March 3, 1873, for three hundred and seventy-six dollars and ninety-two cents damages, and thirty-seven dollars and ninety-five cents costs; have issued execution, which was returned unsatisfied, and have filed a creditor's bill against the district, making said Potter and one Rice defendants; and have obtained an injunction against the district, enjoining it against paying out any of the fund until the further order of the court, which injunction is still pending, and in full force; that complainant does not know the extent of the interest of said Rice in the fund, except by report, which is to the effect that Rice claims to hold an assignment from Potter, made after the settlement, of about two hundred and fifty dollars of said fund, but whether *bona fide*, complainant is not advised; that one William Baird,

31 mich.—12.

who, long since said settlement, purchased many of the smaller claims against Potter from mechanics who performed labor upon said building, amounting to about fifteen hundred dollars, has also recovered judgment against Potter, issued execution, which has been returned unsatisfied, and filed a creditor's bill against complainant and said Potter and Rice, and obtained an injunction enjoining complainant against making any payment from said fund until the further order of the court; that in both said creditor's bills the complainants therein seek to recover the whole amount of their claims.

The bill also alleges that others of the defendants are threatening suits at law against complainant, and unless restrained by the court, complainant fears they will bring such suits, and that complainant will be harrassed and perplexed and subjected to a multiplicity of suits, with costs and expenses attendant upon the same, as well as the amounts that may be obtained in judgments in such suits; that the time for payment of said last installment on said contract has long since elapsed, and complainant has at all times been ready to carry out the terms of said settlement, and to pay each of the aforesaid claimants his *pro rata* share of said fund, had it not been for the pending of said several suits, which have operated as an effectual prohibition against such payments; and that complainant is now ready to comply with the terms of said settlement, whenever this can be safely done; but that it cannot safely make payment without the aid and assistance of the court.

Complainant avers that it has no interest in the fund, other than to pay it over to the proper parties entitled to the same; that by reason of the conflicting claims, some demanding payment in full, others *pro rata*, according to the terms of the settlement, complainant is in doubt to whom payment should be made; and submits that each of said several claimants ought to interplead and litigate their rights between themselves, under the direction of the court,

and ought to be restrained from any further proceedings against complainant; offers and asks to be allowed to bring the fund into court for the benefit of such parties as may be found by the court entitled thereto; averring that complainant has in no manner aided, or colluded with any of the defendants, jointly or severally, that any of them might obtain any advantage over any of the others; that the conflict is wholly between the several defendants, and that complainant is only interested, and is anxious, that the fund should be paid over to the proper person or persons, after deducting actual costs and expenses.

Asks an answer under oath; prays that defendants may be decreed to interplead touching their several claims, and that complainant may be at liberty to bring said fund into court in trust for the persons of right entitled thereto, subject to the further order and decree of the court; that costs and expenses may be decreed to complainant out of the fund, and that the several parties (naming them) who have commenced proceedings or suits against complainant, may be enjoined from further prosecuting the same, etc., and for such further or other relief as shall be equitable.

*R. W. Boynton*, for complainant.

*William A. Pratt*, for defendants.

CHRISTIANCY, J.

From the facts set forth in the bill, and which the demurrer admits to be true, the complainant (the school-district), without any fault of its own, by the failure and insolvency of Potter, and by acting only with the laudable design of securing to those who had furnished him labor and material for the building of the school-house,—the ultimate purpose for which the building fund was raised and to be raised, and upon the application of which to this purpose the laborers and material-men may properly have relied in giving credit to Potter,—appears to have been placed in

a very embarrassing position, and entangled in a labyrinth of litigation in which it has no real interest, which its organization as a school-district is illy fitted to carry on, and in which a misstep or an error of judgment may render it liable to costs, and possibly to judgments for debt or damages beyond the amount of the fund in its hands. This fund is a kind of resulting trust,—resulting from the facts of the case and the equities of these material-men and laborers, which the district cannot be considered as having done wrong in endeavoring to protect by the acceptance of the trust imposed upon it by the circumstances of the case, the equities of the parties, and the agreement of Potter, the failing contractor. The debt was not yet due from the district; when due, had Potter remained solvent and no other arrangement had been made, the amount would have been paid to him. But the district clearly had a right to pay it to others at his request; and it was immaterial to the district whether it paid directly to him, or to others at his request or for his use. His agreement authorized the district, as between it and him, at least, to pay it *pro rata* to these particular classes of creditors. These creditors, it is true, such of them at least as did not assent to the arrangement, would not be bound to accept this provision, though in accepting it they would not thereby release their claim upon Potter for the balance; and perhaps (for this is a point not to be decided in this suit) the creditors not assenting might individually, by legal or equitable proceedings, render the fund in the hands of the district liable to the full amount of their respective claims until the fund should be exhausted in the order of the judgments obtained. But, as appears by the bill, part of the creditors for whom this *pro rata* provision was made, have accepted its terms, and ask for the payment of their *pro rata* share. But the district, though wishing thus to pay, cannot do so, because other creditors of the same class, as well as some for whom the provision was not intended, claim their entire debts.

Garnishee proceedings have been commenced against the

district, to reach the fund, by some of Potter's creditors; some of these laborers and material-men, for whose benefit the fund, by the agreement, was intended, and those who have purchased the claims of some of these, having recovered judgments against Potter, have filed creditor's bills against him, making the district defendant, and enjoined it from paying out any of the fund until the further order of the court, and others are threatening similar or other legal or equitable proceedings, to reach this fund in its hands, which is only sufficient to pay about one-half the claims.    The district, since the money became due, have always been ready and willing to pay, whenever it can be ascertained, in this labyrinth of counter claims, to whom it ought or can safely pay.    The contest is one purely between the respective claimants of portions of this fund, no one claiming the whole fund, but some claiming their entire debts without abatement, others, their *pro rata*, according to arrangement between Potter and the district.    Under the circumstances, the district says by this bill, "While we are ready and anxious to pay over this money to the parties really entitled, it is impossible for us to ascertain who these parties are.    We are mere naked trustees, without interest,—mere stakeholders.    We have no objection to your litigating or settling your respective claims to this fund between yourselves.    We are ready and anxious to comply with such judicial determination, or such settlement, and to pay over the fund accordingly.    But we object to being forced, not only to participate in the battle between you, and its risks and embarrassments, but especially to occupying a position between your respective lines, where your thrusts of each can only reach the other through us.    This is your own battle, not ours.    We ask to be permitted to step aside, and allow you to aim your blows directly at each other, and take upon yourselves all the risks and responsibilities incident to the contest.    We ask to be allowed to place the fund, which you are all endeavoring to reach, in the hands and custody of the court, who may regulate and

direct the contest between you in such manner as shall be found best to secure your respective rights, allowing us to retire from the contest with our costs of this litigation to come out of the fund, which we have till this time held in good faith, for the benefit of the parties who may be found entitled to it, or any portion of it."

This, under the circumstances of this case, would seem to be but a reasonable request on the part of this school-district; and if no method had yet been invented or recognized by courts of equity, by which the district could be allowed to retire from the contest in which it has no interest, and by placing the funds in the hands of the court, where the contest may be carried on by the parties really interested, and their rights determined, without holding the complainant liable to this multiplicity of suits, and the risks and embarrassments of protracted litigation, we should have to admit a degree of infirmity in courts of equity, a want of adaptation in the remedies they have contrived to meet the exigencies of business and the adjustment of rights, which would be far from creditable.

If there be any such remedy for complainant, it is by bill of interpleader; no other is claimed, and the present bill is framed for this remedy.

But it is objected by the defendants: *first*, that the complainant is not entitled to sustain a bill of interpleader, because it has, or had, it in its power to relieve itself of all embarrassment by paying over the fund to Potter, to whom it owes it as a debt. However, this might have been before any of the creditors, for whose benefit the arrangement between complainant and Potter was made, had signified their acceptance of the provision, and assented to take from complainant their ratable share, and before any suits were commenced by others for their entire claims; it is plain the complainant could not safely pay over the fund to Potter after such acceptance by part of the creditors, or after such suits were instituted. Besides, there was no duty resting upon complainant to pay to any one, until the last

installment became due; and after it became due, complainant could not safely pay, for the reasons stated.

The *second* objection, and the one upon which defendants seem specially to rely, against maintaining this bill of interpleader, is, that to maintain such a bill, it must appear that the several claimants, who are asked to interplead, are claiming from complainant the same debt, fund or duty; in other words, that there must be an absolute identity in the thing claimed by the several claimants; and it is insisted that here is no such identity, because the respective claimants do not severally claim the entire fund in the hands of complainant, nor does any one claim the whole fund, but each seeks only to recover a part of the fund; and though their several claims amount in the aggregate to twice the amount of the fund, no two of them are shown to be claiming the same identical portion; and therefore a bill of interpleader will not lie.

It must be confessed that some of the authorities cited by counsel for defendant, do, upon a first view, at least, seem to recognize the proposition contended for, and to place the right to maintain a bill of interpleader upon this narrow and technical ground.

There have been, occasionally, upon the bench, as well as at the bar, minds of that peculiar cast, which always see more importance in arbitrary signs, than in the thing signified; in the form and detail of the mere scaffolding, than in the building it was intended to aid in erecting; minds which take it for granted that the whole law has been exhausted in its application to the particular enumerated facts found in the cases which have already arisen and been decided, and that no remedy can be given in cases which may happen to lack some of the facts enumerated in past cases, or to present new ones; thus mistaking what in their nature were but instances of the application of a principle, for a restrictive definition of the entire principle itself.

To minds of this type it would be very natural to infer that because a Lord Chancellor had said in some case

(as *Lord Rosslyn* said in *Dungey v. Angove,* 2 *Ves., Jr.* 310 ), "upon the definition of it, a bill of interpleader is where two persons claim of a third, the same debt or the same duty" ( which was correct in its application to that case ), that therefore the identity must be absolute and perfect throughout. But there would, it seems to me, be just as good reason for saying that because the definition speaks only of "*two* persons" claiming from the third, therefore the bill could not be maintained, if there were three or more claimants, instead of two.

Most of the cases, however, which seem at first view to have held that interpleader will not lie when two or more persons are claiming portions of the same fund, will be found to be, either cases where the aggregate of the several claims did not exceed the whole fund, or where the conflicting claims were of such an adverse and incongruous nature that they could not well be litigated in one suit without multifariousness, or where some of them would be entitled to a trial by jury,—as where the title of a party was to be tried, for which an ejectment was the proper remedy; and the cases will be found to turn mainly upon some of these grounds, though the want of identity, when parties are claiming only parts of the same thing, was mentioned. This is true to some extent, of the very cases upon which the defendants mainly rely.—See *Hoggart v. Cutts,* 1 *Cr. and Phil.,* 204; *Atkinson v. Manks,* 1 *Cow.,* 703; *Glynn v. Duesbury,* 11 *Sim.,* 139; 2 *Daniels Ch. Pr.,* 1658 (*last ed.*).

But no such incongruity in the nature of the several claims appears in the bill now before us. All the parties claim through Potter, and as his creditors.

And notwithstanding the narrow and technical ground as to the identity of the several claims indicated in these and some other cases; yet upon the great weight of authority, both English and American, a much more liberal and reasonable rule has been established; and bills of interpleader have been frequently maintained, where the several claimants, instead of claiming the whole fund or matter in

dispute, have claimed different portions of the fund, when the aggregate of all the claims exceeded the full amount of the fund; and the complainant being, as in the present case, virtually a stake-holder, and unable to determine to whom, or in what proportions, the payments should be made.—See *Aldrich v. Thompson,* 2 *Bro. Ch. R.,* 149, 150; *Stuart v. Welch.,* 4 *Mylne & Cr.,* 316 to 320; *Angell v. Hadden,* 15 *Ves.,* 244; *S. C.,* 16 *Ves.,* 203; 2 *Meriv.,* 164; *Paris v. Gilham, Cooper's Eq. R.,* 56; *Sieveking v. Behrens,* 2 *Myln. & Cr.,* 581, 592; *Morley v. Thompson,* 3 *Madd.,* 564; *Mitford's Ch. Pl.,* 59, 141; *Eden on Injunctions,* 339, 340 (*id.* 3d *Amer. ed.,* 395 to 398); *Spring v. South Car. Ins. Co.,* 8 *Wheaton,* 268; *City Bank v. Bangs,* 2 *Paige,* 570; *Gibson v. Goldthwaite,* 7 *Ala.,* 282; *Peel v. Board of Metropolitan Police,* 5 *Amer. Law Reg.,* 98; *Story's Eq. Pl.,* §§ 810 to 824.

And courts of equity are generally very liberal in protecting mere naked trustees or stake-holders against conflicting claims to the money or thing in their hands, and from the vexation and embarrassment attending the litigation concerning it, in which they have no interest.—*Bell v. Hunt,* 3 *Barb. Ch. R.,* 391; *Farley v. Blood,* 30 *N. H.,* 363; *Lozier v. Van Saun,* 2 *Green's Ch.,* 325.

We therefore see nothing in the objection founded upon the want of identity of these claims.

But, *third,* it is objected that complainant cannot maintain the bill, because it does not show that complainant can sustain any risk from the inability to determine to whom payment is to be made; that the suits commenced cannot injure complainant, because the judgment of the court against it in the respective suits, and the payment of these in succession until the fund was exhausted, would be a complete defense to the remaining suits. As a sufficient answer to this objection, I cite the remarks of the Lord Chancellor in *Langston v. Boylston,* 2 *Ves. Jr.,* 109. "A party claiming no right in the subject is doubly vexed by having two legal processes going on against him in the

names of different persons, at the same time; he comes upon the most obvious equity to insist that those persons claiming that to which he makes no claim, should settle that contest among themselves, and not with him;" and he further says: "It may be said in all cases of interpleader, as it has been said in this, 'Stand the action; if A proceed first, and you have a good defense against him, that puts an end to his claim; if A succeed, that is a defense against the claim of B.' That is precisely the situation in which the plaintiff ought not to be placed."

It is, *fourthly*, objected that no bill of interpleader should be maintained, because the bill shows that another suit in chancery is pending, in which complainant is defendant; and that the right to the fund may be settled in that suit. But the answer to this is that there is more than one such suit in equity pending against complainant, and several proceedings at law, or of a special character; and this is one of the grievances complained of, and one of the recognized grounds for maintaining the bill of interpleader; besides, neither of the pending suits would or could determine the question of the rights of all the parties, or as to the whole fund.

But, *fifth*, it is further objected that the bill of interpleader cannot be sustained where it shows that one party is entitled to the fund to the exclusion of others; and this, as an abstract proposition, is true; but we do not think it is true, as contended by counsel for defendants, that this bill shows Potter, or any other claimant, to be thus entitled.

Upon the whole case we see no ground on which the demurrer can be sustained. The decree of the circuit court in chancery, sustaining the demurrer. and dismissing the bill, must be reversed, with costs, and the case must be remitted to that court, with leave for the defendants to answer if they see fit.

The other Justices concurred.