FLORIDA EAST COAST RAILWAY COMPANY, a Corporation, *Appellant*, v. JAMES L. ENO, *alias* J. L. ENO, THE ST. AUGUSTINE NATIONAL BANK, et al., *Appellees*.

Division B.

Opinion filed June 26, 1928.

*Robt. H. Anderson* and *John B. L'Engle,* for Appellant;

*David R. Dunham* and *Lawrence C. Case,* for Appellees.

BUFORD, J.—In this case the Florida East Coast Railway Company filed a bill for interpleader against a number of claimants who had each filed notice of liens under the provisions of Sections 3497 and 3518, Rev. Gen. Stats. of Florida, the defendant, Eno, the contractor, and the St. Augustine National Bank, the assignee, of the contract

The bill of complaint shows that the complainant was indebted to the contractor at the time the liens claimed by laborers and material men became effective under the

terms of four separate and distinct contracts in the sum of $7,126.73; that the railroad company had contracted with Eno on July 20th, 1925, to furnish certain material and perform certain work at or near Deerfield; that the complainant had contracted with Eno on July 22nd, 1925, to furnish certain material and do certain work at or near Camden and had entered into a contract with Eno on August 4th, 1925, to furnish certain material and do certain work at Palm Beach and had entered into a contract on August 17th, 1925, to furnish certain material and do certain work at or near Salerno and had entered into a contract with Eno on August 18th, 1925, to furnish certain material and perform certain work at or near Stuart.

That the contract known as the "Stuart" contract was never in anywise performed and that the plaintiff never became indebted to Eno for the performance of any work under the "Stuart" contract. That various material men and laborers to whom Eno became indebted for material furnished and labor performed under the "Palm Beach" contract filed claims of liens in the aggregate sum of $4,113.88; that at the time the complainant was indebted to Eno under the contract in the sum of $6,088.08; that various materialmen and laborers to whom Eno had become indebted for materials furnished and labor performed under the "Camden" contract filed claims of liens in the aggregate sum of $546.85, and that complainant was at that time indebted to Eno under that contract in the sum of $148.32; that various material men and laborers filed claims of liens for work done and material furnished under the "Stuart" contract in the sum of $75.00 and that at that time the complainant was not indebted to Eno under that contract in any sum whatever. That the St. Augustine National Bank had taken an assignment from Eno addressed to Florida East Coast Railway Company at St.

Augustine, Florida, on August 8th, 1925, of any and all sums which might be due, or become due, to Eno under the several contracts, which assignment was in the following language, to-wit:

"August 8, 1925.

"Florida East Coast Railway Company,
"St. Augustine, Florida.
"Gentlemen:

"For the purpose of protecting them for funds advanced or to be advanced, I hereby assign, transfer and set over unto the St. Augustine National Bank any and all sums which may be due or may become due me as payment for services performed under any contract or contracts made with the Florida East Coast Railway Company for clearing, grading or similar work.

"I further authorize the issuance of vouchers payable to the St. Augustine National Bank for any monies due me, hereby authorizing you to accept the endorsement of the St. Augustine National Bank upon such vouchers.

"Very truly yours,
"(s) JAMES L. ENO."

And that the bank under the provisions of this assignment claims a balance of unpaid advances made to Eno in the sum of $10,197.74, thus making it appear that there are, including the claim of St. Augustine National Bank, demands upon the funds due to Eno under his several contracts aggregating $14,933.47, while there was due Eno only $7,126.73, leaving a deficit of $7,806.74. To the bill of complaint St. Augustine National Bank filed a demurrer. The demurrer was overruled. Answers were filed by several defendants and cross bill was filed by St. Augus-

tine National Bank. Exceptions were filed to an amended answer of the St. Augustine National Bank. The exceptions were set down for hearing and, on hearing, were overruled. There was a demurrer to the cross bill of St. Augustine National Bank. The demurrer was sustained and the cross bill was dismissed. The appeal is from the order of the court made and entered on the 25th day of March, 1927, overruling the exceptions of the complainant to the amended answer of the defendant.

Before considering the merits of the questions presented by the order overruling the exceptions to the answer, we must first determine whether or not the complainant has any standing in the court for the purpose for which it is here, that is to present a case of interpleader.

When the bill is measured by the rules enunciated by this Court in Jacksonville Ice & Cold Storage Co., et al., v. South Florida Farms Co., 91 Fla. 593, 109 So. R. 212, and in Bank of Bay Biscayne v. Fuller, filed January 9th, 1928, and reported in 115 So. R. 530, we arrive at the conclusion that the allegations of the bill of complaint will not support the bill for interpleader and that the demurrer of St. Augustine National Bank should have been sustained on the 2nd, 3rd, 5th and 6th grounds, which are respectively, as follows:

"2nd. That there is no equity in the bill.

"3rd. No right on the party of the complainant to interplead is shown.

"5th. Said bill fails to show any privity of interests between the parties defendant.

"6th. It does not appear affirmatively that the complainant is an innocent stakeholder."

It will be observed that the lien holding claimants whose claims originated under the performance of the "Palm

Beach" contract were not in privity with the owner, the railway company, nor were they in privity with the St. Augustine National Bank, nor were they in privity with any of the lien holding claimants whose claims originated under the performance of either the "Salerno" contract or the "Stuart" contract. A like lack of privity between the lien-holding claimants whose claims originated under the performance of the "Salerno" contract and other parties to the suit exists and so it does in the case of the lien-holding claimants whose claims originated under the performance of the "Stuart" contract. The St. Augustine National Bank is not in privity with any of the other defendants to the suit except Eno.

It will also be observed that the rights of the several defendants are asserted under adverse titles and of different natures. Each lien holder claimant is alleged in the bill to assert his right under the acquisition of a lien provided by statute, while it is alleged that the St. Augustine National Bank asserts its claim under an assignment of the proceeds of the contract by the contractor who had agreed to perform the several contracts. It is evident that the question of priority and superior dignity of the several claims is involved. The rights of the materialmen and laborers who have become lien-holding claimants is fixed by statute. The rights of the bank and the liability of the railway company to the bank may be found to be fixed by contract between the parties.

In Jacksonville Ice & Cold Storage Co., et al., v. South Florida Farms Co., *supra*, it is said:

"The remedy by 'interpleader' is an equitable one, and is based upon the theory that conflicting claimants should litigate their claims among themselves without involving the stakeholder in their dispute. Its office is to protect one against the embarrassment of con-

flicting claims and double vexations in respect to one liability.''

And further:

''A stakeholder's right to interpleader is subject to the highly technical requirement that the opposing claimants' title must be 'in privity with each other'; one derived from the other or both from a common source. Where the rights of the claimants are asserted under adverse titles and are of different natures, the bill cannot be maintained.''

And further:

''The person seeking an interpleader cannot cast upon the claimants the burden of settling the question of whether the complainant has obligated himself to one of the parties. He is supposed to know whether he has or not. The complainant should be indifferent between the claimants, without interest in the controversy, and should not by any act on his part have caused the embarrassment of conflicting claims and the peril of double vexation.''

The allegations of the bill fail to show that the railway company was a stakeholder between the parties defendant in the suit and in Bank of Bay Biscayne v. Fuller, *supra,* this Court held:

''The bill of complaint shows that the complainant was not a stakeholder as between John M. Murrell and Commercial Bank & Trust Company, or as between Edward M. Fuller and Commercial Bank & Trust Company, or as between Commercial Bank & Trust Company and any of the other parties defend-

ant in this suit. The bill of complaint fails to show any privity between Commercial Bank & Trust Company and John M. Murrell or between Commercial Bank and Trust Company and G. M. Horgan, S. L. Gaines or W. F. McGee with reference to the claim involved.''

And, therefore, held the bill in that case to be bad on demurrer.

The Supreme Court of Oregon in Maxwell v. Frazier, et al., 96 Pac. R. 548, 18 L. R. A. (N. S.) 102, in discussing a bill for interpleader against two brokers, with each of whom the owner had a separate contract for a sale of the property, to determine which is entitled to the commission for its sale, say:

''If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject matter. In the case of Reynes v. Dumont, *supra,* the court say: 'It was held in Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70, that, if the court, upon looking at the proofs, found none at all of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact and give it effect, though not raised by the pleadings nor suggested by counsel * * * The doctrine of these and similar cases is that the court, for its own protection, may prevent matters, purely cognizable at law, from being drawn into chancery at the pleasure of the parties interested;

but it by no means follows, where the subject matter belongs to the class over which a court of equity has jurisdiction, and the objection that the complainant has an adequate remedy at law is not made until the hearing in the appellate tribunal, that the latter can exercise no discretion in the disposition of such objection.' Kilbourn v. Sunderland, 130 U. S. 505, 32 L. Ed. 1005, 9 Sup. Ct. R. 594; Williamson v. Monroe, (C. C.) 101 Fed. R. 322.

"There is an entire absence of matter of equitable cognizance in the case before us; nor is the relief sought such as is peculiar to equity, and to entertain jurisdiction and grant the relief that the facts might disclose to be proper would be to assume jurisdiction of an issue, purely legal, because not questioned by the defendant at the proper time. Where there is a total absence of matter of equitable cognizance, the objection of want of jurisdiction is not waived by answering to the merits.''

We conclude that the complainant did not by the allegations of its bill of complaint establish its rights to interpleader and that the demurrer, as hereinbefore stated, should have been sustained. It, therefore becomes necessary for us to hold that the question attempted to be presented by the appeal from the order overruling the exceptions find no basis in the record requiring their adjudication. The cause should be remanded, at the cost of the appellant, with directions to the chancellor to dismiss the bill of complaint; and it is so ordered.

Remanded with order to dismiss.

WHITFIELD AND TERRELL, J. J., concur.

ELLIS, C. J., concurs in the opinion and judgment.

Strum and Brown, J. J., dissent.

Strum, J. (dissenting):

The appeal now under consideration is from an order overruling complainant's exceptions to portions of the answer of St. Augustine National Bank, one of the defendants. No appeal was taken from the order overruling the defendant's demurrer to the bill. This appellant, complainant below, can not complain of the latter order, for it was in complainant's favor. The appellee bank can not complain of that order because it has taken no appeal therefrom, nor filed any cross assignments of error.

If the subject matter of the bill was such that it was entirely without the field of equity jurisprudence, a situation which would negative the foundation of complainant's right to equitable cognizance and relief and which would constitute what is frequently termed a lack of equity "jurisdiction," this Court would be justified, even on this appeal, in noticing such fundamental defect and ordering the bill dismissed, even though the point had not been raised by the pleadings. Trustees of I. I. Fund v. Gleason, 39 Fla. 771; 23 So. R. 539.

In my judgment, however, that is not the situation here before us. When labor has been performed upon property, or materials furnished, through a contractor under circumstances which entitle those performing the labor or supplying the materials to a lien on the property to be satisfied out of the funds due by the owner to the contractor, and when without fault on the part of the owner conflicting claims are asserted by the contractor's assignee and the laborers and materialmen, amongst themselves, as to who is entitled to the sum due and unpaid by the owner to the contractor on account of such work, a controversy in which the owner has no interest, the owner may bring

such fund into court and maintain a bill of interpleader against the conflicting claimants to compel them to determine between themselves their respective rights and priorities.

Such a bill falls within recognized limits of equity cognizance and satisfies the requirements laid down by the best authorities for sustaining the equitable remedy of interpleader. Lowry v. Downing Mfg. Co., 73 Fla. 535, 74 So. R. 525; Grand Haven etc., v. Western, 31 Mich. 85; Newhale v. Kastens, 70 Ill. 156; Atchison, etc., v. Scoville, 13 Kan. 17; Clark v. Saloy, 2 La. Ann. 987; Illingworth v. Rowe, 28 Atl. R. 456; Brunetti v. Grandi, 104 Atl. R. 139, and cases cited; Lapenta v. Lettieri, 44 Atl. R. 730, 77 Am. St. R. 316. See generally 4 Pomeroy's Eq. Jurisprudence (3rd Ed.), Sec. 1322.

In my opinion, the utmost that can be said against the soundness of this bill is that it is multifarious in that the indebtedness due and owing by the owner to the contractor, as to which the interpleader is sought, is made up of five separate, distinct and independent funds, arising from as many independent contracts, each fund being separate and distinct from the other, and the claims of the several defendants being not common to all the funds, there being five sets of creditors asserting separate and unrelated claims against the several funds, besides the bank which asserts its claim to be prior and paramount as to all the funds.

Even if that situation renders the bill multifarious, it would constitute merely a ground of demurrer, and although the objection, when seasonably asserted by one entitled to raise the point, might be fatal to the bill because the several sets of claims are not in privity nor derived from a common source, the subject matter of the bill, though the latter be multifarious, would still be within the established field of equity cognizance. And in my judg-

ment this is true even in view of the restricted scope of the equities which underlie the right to interpleader. The bill could be amended to cure the defect. In Malone v. Meres, 109 So. R. 677, it was held that courts of equity have general jurisdiction or power to enforce liens, and even though in a particular case the chancellor, having jurisdiction of the parties and the subject matter, holds that a written instrument affords a lien, still when properly interpreted and taken in connection with proper allegations and permissive proofs concerning its import or intended purpose the instrument affords no lien, but nevertheless a decree is rendered in the cause decreeing the existence of and affording a lien in the premises, such decree is not void for want of jurisdiction or power to render it, though the decree may be erroneous and subject to reversal on appeal duly taken. It seems to me that the principle just stated applies to this situation. A bill of interpleader being a proper matter of equitable cognizance, the chancellor has the *power* to decide that the bill is good as against demurrer, and even though that decision be erroneous and the court erroneously proceeds after proper objection taken, the final decree would not be void. The order on demurrer, if erroneous, might be subject to reversal on a direct appeal therefrom, or upon an appeal from the final decree, but it can not be reached collaterally or upon an appeal from another interlocutory order. Malone v. Meres, *supra;* Peck v. Beloit Sch. Dist., 21 Wis. 516, 21 C. J. 34, 162.

Ordinarily the objection of multifariousness goes to convenience rather than to the merits and where the controversies involved can be determined as well in one as in several suits, and that procedure does not interfere with the proper administration of justice, an objection for multifariousness is not ordinarily allowed. Mountein v. King,

75 Fla. 12, 77 So. R. 630; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 So. R. 216. In interpleader, the defendant by failing to interpose timely objection, as is the case here with all defendants except the bank, may waive the objection that the bill does not make out a proper case for interpleader and the court may proceed to decree an interpleader even though a demurrer on that ground might have been sustained if seasonably interposed. 33 C. J. 446. So the objection of multifariousness is not a fundamental one in the sense that it deprives a court of chancery of the power to entertain the bill, even under the exacting requirements of the rules applicable to interpleader. McGinn v. Interstate Bank, 166 So. W. R. 345.

It is well settled that the objection of multifariousness or misjoinder is a personal one, and that only a defendant that is prejudiced thereby may complain. Mountein v. King, *supra*. The only defendant demurring to the bill is the bank. Since the bank claims its assignment to be paramount and superior to the claims of all the materialmen and laborers under all the contracts, and since the bank is interested and relief is sought against it in every phase of the controversy, it is difficult to see how it is prejudiced in the premises, by having the entire controversy adjudicated in one suit rather than in several.

Being of the opinion, for the reasons stated, that the bill should not be dismissed on this appeal, I dissent.

BROWN, J., concurs.