CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. MOORE.

Opinion delivered November 8, 1909.

1. INTERPLEADER—DEFINITION.—A bill of interpleader is a bill filed for the protection of a person from whom several persons claim legally or equitably the same thing, debt or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter. (Page 457.)

2. SAME—BILL IN NATURE OF.—A bill in the nature of interpleader is one in which the complainant seeks some relief of an equitable nature

concerning the fund or other subject-matter in dispute, in addition to the interpleader of conflicting claimants.  (Page 458.)

3. SAME—JURISDICTION.—Where a railroad company was sued in two counties by various creditors of a contractor to whom it was indebted for construction work, they holding claims in excess of its indebtedness to such contractor, it was entitled to file a bill in nature of interpleader in either county and to ask that all of the claimants be brought in, and have their claims adjusted and the amount distributed, and in such case the court first acquiring jurisdiction will grant such injunctive and other relief as may be necessary in the exercise of its jurisdiction.  (Page 458.)

4. SAME—CONCLUSIVENESS OF DECREE.—Where a creditor sued in a court of one county and subsequently was made party to a bill of interpleader in a court of another county and restrained from proceeding further in the former suit, he should have appeared in the latter court and set up all his rights there, and cannot litigate his claim in the former court.  (Page 459.)

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

### STATEMENT BY THE COURT.

On August 30, 1899, appellee brought suit in the St. Francis Chancery Court against T. F. Moore, B. F. Hamit, Jr., R. L. Vansant and the Choctaw & Memphis Railroad Company, to recover judgment for work done in building the railroad of the company mentioned.  The work was done under contract with the firm of T. F. Moore & Company, which firm was a subcontractor under R. L. Vansant.  Appellee prayed for judgment in the sum of $847, and that same be declared a lien on the road bed, etc.  Service was had on the defendants named in the complaint.  The railroad company appeared in that suit, filing an answer and demurrer.  While this suit was pending, the Choctaw & Memphis Railroad Company filed complaint in the Pulaski Chancery Court April 10, 1900, against appellee, T. F. Moore & Company, the Choctaw Construction Company, R. L. Vansant, James Brizzolara and others, alleging that claims were outstanding against the said T. F. Moore & Company on account of work alleged to have been done on said railroad amounting to about $4,000; that the work done by said T. F. Moore & Company under their subcontract with the said Vansant amounted to $26,298.54; that the said Vansant had paid

the said T. F. Moore & Company $24,106.73 on account of said work, and that he was still indebted to them in the sum of $2,191.81, which the said Vansant was withholding on account of the claims made against him by the creditors, subcontractors and laborers of the said T. F. Moore & Company. The plaintiff alleged that it was due R. L. Vansant under the terms of their contract the sum of $4,017.08. And prayed that all the parties holding time checks for work on said railroad under T. F. Moore & Company be made defendants; that T. F. Moore & Company, James Brizzolara and appellee be restrained and enjoined from further prosecution of proceedings instituted by them against said railroad company until the further order of the court; and upon final hearing that the amount, if anything, due and owing by the said Vansant to T. F. Moore & Company, be ascertained and applied on said claims according to the rights of the parties; that said railroad company be allowed to pay into court the amount of money owing under the contract between it and the said Vansant for distribution under the order of the court; and that the property of said railroad company be protected by the decree of the court against the assertion of any lien by any of the parties defendant for or on account of any money that may be owing them by the said R. L. Vansant, or the said T. F. Moore & Company, for or on account of work or labor performed under said contractors.

The appellee was duly summoned, but did not appear. He was restrained by a temporary order of the Pulaski Chancery Court from proceeding further with his suit in the St. Francis Chancery Court until the further orders of the Pulaski Chancery Court. The chancery court of St. Francis County, notwithstanding appellee had been restrained from further prosecuting his suit in that court, proceeded with the cause, and at its May term, 1900, rendered judgment in favor of appellee for the amount of his claim, and declared same a lien on the property of the railroad in the State of Arkansas. On the 26th of June, 1902, execution was issued by the clerk of St. Francis Chancery Court on said judgment, and same was placed in the hands of the sheriff of St. Francis County. The chancery court of Pulaski County enjoined the sheriff of St. Francis County from proceeding under the execution. On the 14th of March, 1907,

appellee filed the complaint in this suit against the appellants, in which, after setting out substantially the facts as above stated, he alleged that the property of the Choctaw & Memphis Railroad Company had passed, first, to the appellant Choctaw, Oklahoma & Gulf Railroad Company by deed, and then by lease from it to appellant Chicago, Rock Island & Pacific Railway Company, and that these appellants were the successors in interest to the Choctaw & Memphis Railroad Company, and were liable for the latter's debts. Appellee then alleged that he did not enter his appearance in the suit instituted against him and others in the Pulaski Chancery Court, that the final decree in that court was long after the decree in his favor in the St. Francis Chancery Court, that therefore the decree of the Pulaski Chancery Court enjoining appellee from enforcing the decree of the St. Francis Chancery Court was null and void as to him. The prayer of his complaint and amended complaint was for the enforcement of the decree of the St. Francis Chancery Court of June 15, 1900, and that appellants, their agents and attorneys, be restrained from instituting or prosecuting contempt proceedings against appellee or his attorneys in the Pulaski Chancery Court because of their connection with the present suit. A temporary restraining order was granted. Appellants demurred to the complaint, and filed motion to dissolve the temporary restraining order, which was responded to by appellee. The demurrer and this motion were overruled. Thereupon appellants answered the complaint. The answer, after setting out at length substantially the proceedings of the St. Francis and Pulaski chancery courts as alleged in the complaint, further alleged the result of the proceedings in the Pulaski Chancery Court as follows: "These defendants represent that the aforesaid suit in the Pulaski Chancery Court proceeded to a final determination, and that on the 22d day of June, 1906, a decree was rendered, in which it was decreed that there was owing by the said Choctaw & Memphis Railroad Company to the plaintiff for work done and performed under the contracts set forth therein the sum of $4,017.08, and that the defendants acquired no lien on the railroad of the plaintiff for the work and labor performed and material furnished under the contracts set out in the pleadings and depositions of said

cause; that the said sum of $4,017.08 should be paid into court, to be distributed among the defendants according to their respective rights therein, and that the defendants and each and all of them be perpetually restrained and enjoined from the prosecution of any action against the plaintiff for the purpose of subjecting plaintiff's railroad to a lien for any work and labor performed or supplies furnished by the defendants or either of them, in, upon or about said railroad under the aforesaid contracts, or from taking any further action or step in any action heretofore instituted for the purpose aforesaid, or for the enforcement or collection from plaintiff of any demand for work and labor. as aforesaid, and that the plaintiff, upon the payment of said sum of money into court, be discharged from all liability to the defendants, or either of them, for or on account of any work or labor done or supplies furnished by the defendants, or either of them, under the aforesaid contract, in, upor or about the construction of said railroad.

"It was further ordered in said decree that said cause be retained by the court for the purpose of determining and settling the respective rights of the defendants and interveners in said cause, or such of them as are entitled thereto in the aforesaid fund of $4,017.08, and 'that said defendants appear by their respective attorneys within thirty days from the date of said decree for the purpose of asserting their claim to a right in said fund. A certified copy of said decree is hereto attached as 'Exhibit A,' and made a part of this answer, to the same extent as if set out in full herein.

"These defendants represent that the said sum of $4,017.08 was paid into court, and that on the 21st day of July, 1906, a further decree was rendered in said cause, ordering that the funds theretofore deposited into court be distributed as therein prescribed, and that the Choctaw & Memphis Railroad Company be discharged from any liability to defendants, or either of them, on account of work and labor on the Choctaw & Memphis Railroad under the contract between the said T. F. Moore & Company and the said R. L. Vansant.

"A certified copy of said decree is attached to this answer as 'Exhibit B,' and made a part hereof to the same extent as if the same were fully set out herein. These defendants state

that the two decrees aforesaid are still in full force and effect, and that the right of the plaintiff, J. W. Moore, to the enforcement of the decree of this court in the aforesaid case of J. W. Moore v. Choctaw & Memphis Railroad Company is fully adjudicated against the said plaintiff; and that by virtue thereof the said J. W. Moore and his attorneys are barred from further prosecuting the cause of action herein, and the same is res judicata."

The prayer of the answer was "that the said J. W. Moore, plaintiff herein, his agents and attorneys, and the officers of this court, be forever restrained and enjoined from executing, or attempting to execute or claim any rights under the decree of the St. Francis Chancery Court, rendered at the May term, 1900, thereof, in a case wherein J. W. Moore was plaintiff and T. F. Moore & Company and others were defendants."

Appellee replied to the latter part of the answer above set forth as follows: "Plaintiff admits that the Pulaski Chancery Court rendered two decrees in the case of Choctaw & Memphis Railroad Company v. T. F. Moore et al., one on the 22d day of June, 1906, and the other on the 21st day of July, 1906, certified copies of which are in the record, but he denies that he and his attorneys are barred by said decrees of the Pulaski Chancery Court from further prosecuting the cause of action herein, or that the same is res judicata, because an 'estoppel cannot be based on a void decree,' and the orders and decrees of said Pulaski Chancery Court in said suit, in so far as they affected the said J. W. Moore or his attorneys, were null and void, for the reason that the St. Francis Chancery Court acquired jurisdiction first of the parties and subject-matter of the suit of the said J. W. Moore against the Choctaw & Memphis Railroad Company, and had the right to render the decree of June 15, 1900, and now has the right to enforce it; the said J. W. Moore never having entered his appearance in said suit in the Pulaski Chancery Court or waived his right to the enforcement of the decree of June 15, 1900, rendered by the chancery court of St. Francis County."

The evidence in the case by appellee consisted in the introduction of the pleadings, papers and proceedings of the chancery court of St. Francis County in the suit instituted in

that court by appellee against T. F. Moore and B. F. Hamit, Jr., partners under the firm name of T. F. Moore & Company, R. L. Vansant, and the Choctaw & Memphis Railroad and the testimony of J. R. Beasley, one of the attorneys for appellee in that suit, who, among other things, testified as follows:

"The facts stated in the first decree of Chancellor Robertson of June 15, 1900, in the case of J. W. Moore *v.* Choctaw & Memphis Railroad Company *et al.* are true. Said decree was written by said chancellor, and the facts stated therein as to what occurred in court at the time and just before the rendition of said decree are stated again in the present bill.

"As attorney for plaintiff in that case, I moved the court to continue it to the next term, and stated that an injunction had been issued by the chancery court of Pulaski County for the purpose of restraining said plaintiff and his attorneys from proceeding further with the case then before the chancery court of St. Francis County. Said motion was overruled by the court, and said cause was ordered to proceed.

"The deed of conveyance made on June 30, 1900, by the Choctaw & Memphis Railroad Company to the Choctaw, Oklahoma & Gulf Railroad Company, which is on record in the recorder's office of St. Francis County, Arkansas, shows upon its face that the latter agreed to assume the payment of all the indebtedness of said Choctaw & Memphis Railroad Company, which is specified and set out in said deed of conveyance, '*and also all other indebtedness or liability of every kind and character that may exist against the Choctaw & Memphis Railroad Company, whether said indebtedness shall be due and payable at the date of the consummation of said purchase or shall become due thereafter.*' The words italicized are an exact copy from said deed. The appellants introduced the pleadings, papers and record of the proceedings had in the chancery court of Pulaski County in the case of Choctaw & Memphis Railroad Company *v.* T. F. Moore *et al.* It was shown by the complaint in that case that the Choctaw & Memphis Railroad Company entered into a contract with the Choctaw Construction Company on the 2d day of November, 1898, for the construction of its railroad, and that the Construction Company on the 11th day of May, 1899, entered into a contract with R. L. Vansant for

the performance of certain work on said railroad between the city of Little Rock and the Mississippi River, and that on the same day R. L. Vansant entered into a contract with T. F. Moore & Company for the performance of certain work on the line of railroad between Little Rock and Memphis. The proof showed that T. F. Moore & Company subcontracted part of that work to the plaintiff in the present suit—appellee—in the months of July and August, 1899. The complaint in the suit of the Choctaw & Memphis Railroad Company in the chancery court of Pulaski County filed April 10, 1900, against T. F. Moore and B. F. Hamit, Jr., under the firm name of T. F. Moore & Company, R. L. Vansant, James Brizzolara and others, showed that at the time it was filed a suit was pending in the Pulaski Circuit Court, instituted by T. F. Moore and B. F. Hamit against R. L. Vansant, for $25,469.40, the sum alleged to be due them for work on the railroad of Choctaw & Memphis Railroad Company, and that plaintiffs in that suit were seeking also to have the amount sought to be recovered of Vansant declared a lien on the railroad of the Choctaw & Memphis Railroad Company. It further showed that T. F. Moore and Hamit had also instituted a separate suit against the Choctaw & Memphis Railroad Company for $1,782.34, alleged to be due them for work on the railroad. It showed that James Brizzolara had a suit pending, and that various parties held time checks issued by T. F. Moore & Company, towit:

|  |  |
|---|---:|
| Robt. L. Pettus, who holds checks to amount of $ | 269.40 |
| L. Rollwage & Co. ........................ | 88.20 |
| S. B. Trapp, Jr. .......................... | 150.30 |
| Fuzzell, Graham & Co. ..................... | 259.90 |
| Brandon & Baugh ........................ | 283.35 |
| T. C. Folbre & Co. ....................... | 75.55 |
| Pettus & Buford .......................... | 240.50 |
| M. C. Hamilton .......................... | 424.26 |
| Becker & Lewis .......................... | 154.35 |
| —— Mallory .......................... | 3.20 |
| J. W. Beck & Co. ........................ | 1,157.20 |

"That these parties claimed that the amounts due them were a lien upon the railroad. It showed that appellee's suit was pending in the St. Francis Chancery Court to have the amount

alleged to be due him declared a lien upon the railroad of the Choctaw & Memphis Railroad Company. The decree of the Pulaski Chancery Court, in the case of Choctaw & Memphis Railroad Company against the various parties named and the appellee, showed that the Pulaski court adjudged in that case that appellee and the others acquired no lien on the railroad. It showed also that the Pulaski Chancery Court ordered and decreed as follows:

" 'That the said sum of $4,017.08 (four thousand and seventeen and eight one-hundredths dollars) be paid into court to be distributed among defendants according to their respective rights therein, and that the defendants and each of them be perpetually restrained and enjoined from the prosecution of any action against the plaintiff for the purpose of subjecting plaintiff's railroad to a lien for any work and labor performed or supplies furnished by the defendants, or either of them, in, upon or about said railroad, or from taking any action or step in any action heretofore instituted for the purpose aforesaid, or the enforcement or collection from plaintiff of any demand for work and labor as aforesaid, and that plaintiff, upon the payment of said sum of money in court, be discharged from all liability to the defendants, or either of them, for or on account of any labor done or supplies furnished by the defendants, or either of them, under the aforesaid contract, in, upon or about the construction of said railroad.

" 'It is further ordered that this cause be retained by the court for the purpose of determining and settling the respective rights of the defendants and interveners in said cause, or such of them as are entitled thereto, in the aforesaid sum of $4,017.08, and to that end it is ordered that said defendants appear by their respective attorneys within thirty days from the date of this decree for the purpose of asserting their claims to and right in said funds, and that all of the defendants and any interveners who may have filed an intervention in said proceeding, or their attorney of record, be notified by the clerk to present their claims within the time aforesaid.' "

This decree was entered June 22, 1906.

On the 21st day of July, 1906, the Pulaski Chancery Court entered this further decree in the cause, towit: "Now, on this

day comes the plaintiff, by its attorneys, J. M. Moore and W. B. Smith, and come the defendants and interveners, by Blackwood & Williams and N. W. Norton, their attorneys, and it appearing that of the sum of $4,017.08, due and owing by the Choctaw Construction Company to R. L. Vansant, under said contract and the estimate of the chief engineer of the railroad company, only $2,100.00 was and is payable to the defendants, T. F. Moore & Company, the said Vansant having paid said defendants all that was owing them under the subcontract between the said Vansant and the said T. F. Moore & Company, in excess of that amount, and that of the said sum of $4,017.08 $1,917.08 is going to the said Vansant, it is accordingly ordered that so much of the order and decree entered in this cause as directed said sum of $4,017.08 be paid into court, to be distributed among the defendants according to their respective rights, be set aside, and is thereupon ordered and decreed that the Choctaw Construction Company pay into court the sum of $2,100, to be distributed among defendants according to their respective rights, as provided in said decree, and that the Choctaw Construction Company be authorized to pay the residue of said sum, viz., $1,917.07, to the said Vansant.

"And thereupon [come] the following defendants, whose claims were filed in this cause on a prior day of this term, under the order and decree heretofore entered requiring all claims to be filed within thirty days, viz: Joel E. Wynne, $231.65; R. L. Pettus, 213.30; L. Rollwage & Co., $92.25; Fussell, Graham & Co., $238.50; Brandon & Baugh, $321.90; T. C. Folbre & Co., $75.00; Pettus & Buford, $196.85; M. C. Hamilton, $423.52; Becker & Lewis, $115.70; George Dooley, $18.00; Wm. Kirk, $36.05; J. P. Blanton, $19.50; W. E. Ingram, $139.20; W. T. Sanders, $46.00; T. W. Beck & Co., $811.65; T. H. Moore, $64.75, and present to the court their claims; and the court, having heard the evidence, and being well and sufficiently advised in the premises, doth allow said claims as above set forth; and, no other claims having been presented for allowance and payment, it is accordingly ordered that, after applying a sufficient amount thereof to pay the cost of this proceeding, the clerk of this court distribute the residue of the fund in the registry of this court among said defendants ratably according

to the amount of the several claims of said defendants, and each of them, and that he take the receipts of said defendants, or their attorneys of record, and file the same in this cause.

"It is further ordered and decreed that the Choctaw Construction Company, the Choctaw & Memphis Railroad Company, be discharged from any liability to defendants, or either of them, on account of the work and labor on the Choctaw & Memphis Railroad under the contract between the said T. F. Moore & Company and the said R. L. Vansant."

There was no appeal by appellee from the decree of the Pulaski Chancery Court. The St. Francis Chancery Court rendered a decree against the Chicago, Rock Island & Pacific Railway Company and the Choctaw, Oklahoma & Gulf Railroad Company for $886.15, with interest thereon from June 15, 1900, from which they prosecute this appeal.

*Thos. S. Buzbee, John T. Hicks* and *Geo. B. Pugh*, for appellant.

A suit by a subcontractor involves an inquiry into the contractual relations existing between the owner and the original contractor. 17 N. W. 62; 31 Pac. 188; 34 Pac. 1113. The presence of the original contractor cannot be waived. 34 Pac. 1113; 59 Tex. 590; 6 Mo. App. 25; 45 Mo. App. 288; 73 Ga. 324. Secs. 6662-63, Kirby's Dig., prescribing the method of procedure in such cases, must be strictly construed. 59 Ark. 82; 49 Mo. App. 98. In the absence of the original contractor, the court acquired no jurisdiction. 32 N. W. 374; 74 Ark. 528. There can be no lien when the contract was let before the passage of the lien act. 71 S. W. 267. An injunction merely seeks to control the person to whom it is addressed. High on Inj., § 45. And in a proper case a suit in equity will be enjoined as well as one at law. L. R., 3 Ch. App. 76; 139 N. Y. 111; 1 Jacobs 22; 10 Sim. 479; High on Inj., § 53. Whenever it appears that a large number of suits are impending, and that the rights of the parties can be better protected and enforced in one suit, a court of equity will assume jurisdiction and issue the necessary process to prevent a multiplicity of suits. 67 Fed. 982; 30 Ark. 110; 44 Ga. 560; 67 Ark. 216; High on Inj., § 12 and 1406. The injunction order was binding on parties and privies. 3 Colo. 216; 56 Hun, 641; 9 N. Y. Supp. 223;

11 How. Pr. 365; 8 Abb. Pr. 239. A judgment obtained in violation of an injunction is void. High on Inj., § 142; 1 Swan, 1; 8 B. Mon. 613; 2 Md. Ch. Dec. 42. And if the judgment be void, then proceedings to collect it may be enjoined. 5 Ind. 384; 13 Ind. 513; 27 Ind. 477.

*S. H. Mann, R. J. Williams* and *J. R. Beasley,* for appellee.

Injunction was void. Prohibition was the proper remedy. 26 Ark. 51; 36 Fed. 337; 7 How. 612; 16 Ohio 373; 47 Am. Dec. 377; 49 Ark. 75; 6 Wall. 166; 43 Ark. 62. A trial upon the merits cannot be denied to a litigant upon the ground that he is guilty of contempt of court. 167 U. S. 409. It is not necessary to appeal from a void judgment. 8 How. 495. A void judgment is a nullity, and has no force, either as evidence or by way of estoppel. 60 Ark. 369.

WOOD, J., (after stating the facts.) "A bill of interpleader is a bill filed for the protection of a person from whom several persons claim legally or equitably the same thing, debt or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter. The equity is that the conflicting claimants should litigate the matter among themselves without involving the stakeholder in their dispute." Adams, Eq. 400. Mr. Pomeroy says: "Where two or more persons, whose titles are connected by reason of one being derived from the other, or of both being derived from a common source, claim the same thing, debt or duty, by different or separate interests, from a third person, and he, not knowing to which of the claimants he ought of right to render the debt or duty, or to deliver the thing, fears he may be hurt by some of them, he may maintain a suit and maintain against them the remedy of interpleader." 4 Pom. Eq. Jur., § 1320; 5 Pom. Eq., § 38 *et seq.,* § 60.

"Bills of interpleader have been frequently maintained where the several claimants, instead of claiming the whole fund or matter in dispute, have claimed different portions of the fund, when the aggregate of all the claims exceeded the full amount of the fund, and the complainant, being virtually a stakeholder, is unable to determine in what proportion the payments should

be made." *School Dist.* v. *Weston,* 31 Mich. 85; 23 Cyc. 3.
The bill in the Pulaski Chancery Court was in the nature of a
bill of interpleader.   5 Pom. Eq., § 60.   It alleged that the
plaintiff, the Choctaw & Memphis Railroad Company, was owing
a certain amount on a contract which it had entered into for
the construction of its railroad, that various parties were claiming
certain sums due them for work done in the construction of
the railroad, which sums claimed exceeded the amount that
the railroad admitted to be due, that the parties had instituted
suits to have the amounts claimed by them declared a lien on
the plaintiff's railroad, and it asked that all parties making
such claims be brought into one suit in the Pulaski Chancery
Court, so that their respective claims might be adjusted, and
that the balance (which appellant conceded) might be paid to
the patries entitled thereto.   It is shown by the allegations con-
tained in the bill that there could be no statutory lien, inasmuch
as the contract under which the work was done was let by the
railway company prior to the passage of the lien act of 1899.
*Choctaw & M. Rd. Co.* v. *Speer Hdw. Co.,* 71 Ark. 126; *Choc-
taw & Memphis Rd. Co.* v. *Sullivan,* 70 Ark. 262.   See *Tucker*
v. *Ry. Co.,* 59 Ark. 81.

It may be said of the complaint in the Pulaski Chancery
Court, as was said of the bill in *Guess* v. *Stone Mountain Granite
& Railway Co.,* 67 Ga. 215: "The bill is not without equity,
but rests on equitable jurisdiction of avoiding a multiplicity of
suits and settling interminable litigation in one trial, fixing every-
body's rights and doing justice to all."

A bill in the nature of a bill of interpleader is one in which
the complainant seeks some relief of an equitable nature con-
cerning the fund or other subject-matter in dispute, in addition
to the interpleader of conflicting claimants.   5 Pom. Eq. Jur., §
60.   The statute (section 6013, Kirby's Digest) does not affect
the jurisdiction of the Pulaski Chancery Court to maintain the
suit.   5 Pom. Eq., § 61.

It is clear from the facts of this record that the Choctaw
& Memphis Railroad Company could not have protected itself
against other claimants in the suit instituted against it in the
St. Francis Chancery Court by appellee without filing an answer
in the nature of an original bill, and asking that all parties claim-

ing an interest in the amount conceded by the company to be due for construction work be brought into that suit and have their rights adjusted, and the amount distributed accordingly. But this would have been tantamount to a bill in the nature of a bill of interpleader in the St. Francis Chancery Court, and the same thing in legal effect as the bill filed in the Pulaski Chancery Court. We know of no rule of law or practice that would compel the plaintiff in a bill of interpleader to seek the one forum rather than the other, both having concurrent jurisdiction. It must be assumed, in the absence of evidence to the contrary, that the party bringing his bill of interpleader under such circumstances will select the forum most convenient for the conduct of the litigation.

The familiar doctrine that "the court which first obtains jurisdiction of the subject and parties must have the right to proceed to judgment" is not contravened here by holding that the Pulaski Chancery Court had jurisdiction. For the Pulaski Chancery Court, by the bill in the nature of a bill of interpleader filed by the Choctaw & Memphis Railroad Company against appellee and the others therein named, was the first to acquire jurisdiction of the subject-matter of that bill and all the parties named as defendants therein. Appellee's complaint in the St. Francis Chancery Court was not an interpleader's bill, and that suit could not properly have been transformed into such a bill.

The allegations set forth in the complaint filed in the Pulaski Chancery Court gave that court jurisdiction of the subject-matter, and service of summons on appellee in that suit gave that court jurisdiction of his person. Having jurisdiction, it was proper, according to the practice in such cases, to restrain the several parties to the suit from proceeding in other tribunals to have the same matters adjudicated.

The court first having jurisdiction by the bill of interpleader will grant such injunctive and other relief as may be necessary in the exercise of its jurisdiction. *Crawford* v. *Fisher,* 10 Sim. 479; *Prudential Assurance Co.* v. *Thomas,* 3 L. R. Ch. App. 76-78; 1 High on Injunctions, § § 12, 53; *Guess* v. *Ry. Co., supra.*

After appellee had been restrained from further prosecuting his suit in the St. Francis Chancery Court, no decree of that

court rendered thereafter could avail him. The injunction operated upon the person of appellee, and not upon the court in which the further proceedings were had contrary to the injunction against appellee. Appellee can not have the benefit of a decree rendered in his favor after he had been restrained from taking such decree.

As appellee was a party to the suit in the Pulaski Chancery Court, he should have appeared there, and set up all his rights in that suit; and if its rulings had been adverse, his remedy was to appeal. Although he did not appear in the Pulaski Chancery Court, he was nevertheless bound to do so, and is bound by its decree, from which he did not appeal.

It is unnecessary to consider other questions. The decree of the St. Francis Chancery Court is reversed, and the cause is dismissed.