# Enterprise Lumber Co., *et al. v.* First Nat. Bank.

## *Bill for Interpleader.*

(Decided February 13, 1913. Rehearing denied April 23, 1913.
61 South. 930.)

1. *Interpleader; Grounds.*—To maintain a bill of interpleader it must be alleged and shown that the subject matter was claimed by all the rival claimants, that all the claims are through a common source; that complainant has no interest in the subject matter, and has incurred no independent liability to any of the claimants.

2. *Same; Liability of Debtor; Bank Deposit.*—Where a fund was subscribed by various individuals and deposited in the bank to be paid to a corporation upon its completion of a railroad in accordance with a contract, and a dispute arose between the company and some of the subscribers as to whether the railroad conformed to the requirements of the contract, the fact that the bank has kept the fund as a general deposit subject to check, and has thereby become indebted to those entitled thereto, does not show that the bank has incurred such a liability to any of the claimants as will preclude its right to interplead.

3. *Same.*—Where a bank asked for interpleader to compel a corporation and several subscribers to a fund to interplead to determine their rights to the fund, the fact that the bank has permitted some of the subscribers to deposit their subscriptions in another bank does not preclude its right to an interpleader, where it acknowledges its liability for the whole amount subscribed.

4. *Same; Adverse Claim; Identity.*—The fact that the corporation claims the entire fund, and the subscribers each claim only a part thereof, does not destroy the right of the bank to have the claimants interplead.

5. *Same; Separate Claims.*—Where the bank filed a bill and asked that the corporation and several individual subscribers to a bonus for the construction of a railroad, which fund was deposited in the bank, be required to interplead as to their claims to the fund, and pays the fund into court, the fact that some of the subscribers to the fund thereafter withdrew their claims does not affect the rights of the bank to have the others interplead.

6. *Equity; Multitude of Suits.*—Equity abhors a multitude of suits, and will settle all matters in dispute in one suit, when it can be done under its rules reasonably construed.

APPEAL from Houston Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill for interpleader by the First National Bank of Dothan against the Enterprise Lumber Company and others. From a decree granting the relief prayed for, the respondent Enterprise Lumber Company appeals. Affirmed.

The following are the exhibits to the bill of complaint:

## Exhibit A.

"State of Alabama, Houston County. Know all men by these presents that whereas, the town of Dothan has agreed to raise the sum of $25,000 in cash to be deposited as follows: One-half in the Dothan National Bank and one-half in the First National Bank of Dothan, to the credit of the Enterprise Lumber Company, a corporation having its principal place of business in the city of Atlanta, state of Georgia, and for said sum of money so deposited, as an absolute donation to the

Enterprise Lumber Company, the said Enterprise Lumber Company does hereby promise and agree to build a chartered railroad from the town of Dothan, Houston county, Ala., to some deep-water harbor on the Gulf of Mexico, and to operate the same as a common carrier, for the transportation of passengers and freight of every kind and description usually carried by railway companies: It is contemplated by this contract that the said Enterprise Lumber Company shall finish said railroad from Dothan to said deep-water harbor within three years after the signing and delivery of this contract; but, in case the said Enterprise Lumber Company shall exercise reasonable diligence in the prosecution of its work in building said railroad, and it shall require a longer time than three years to finish said road, the said Enterprise Lumber Company shall not have more than four years to finish same from the signing and delivery of this contract. In any event, the said railroad shall be finished to the Pensacola & Atlantic Division of the Louisville & Nashville Railroad within 15 months from the signing and delivery of this contract. When said railroad is finished from Dothan to the Pensacola & Atlantic Division of the Louisville & Nashville Railroad, the said Dothan National Bank will, and it hereby agrees to, pay the check of the Enterprise Lumber Company for $4,166.66, a debit to be charged against the said deposit of $12,500, and at the same time the said First National Bank of Dothan will, and it hereby agrees to, pay the check of the said Enterprise Lumber Company in the sum of $4,166.66, to be charged against the said deposit of $12,500, and the balance of said money in said banks shall be paid to the said Enterprise Lumber Company upon its check when said railroad has been finished. And within the meaning of this contract, the said railroad is to be

finished when a passenger train is run over said road from Dothan to said deep-water harbor on the Gulf of Mexico. It is further agreed that in addition to the said $25,000 to be paid to the said Enterprise Lumber Company, the town of Dothan shall deliver to the said Enterprise Lumber Company a certified copy of an ordinance, wherein the said town shall agree to furnish for a term of five years a reasonable amount of electric lights for the purpose of lighting its yards, depot, office, and shops, and a reasonable supply of water for its office, shops, depot, and engines: Provided that such supply of water shall not interfere with or cut off the supply of water to the citizenship of Dothan. It is agreed, also, that the said town, under proper ordinance or resolution, shall permit the said Enterprise Lumber Company, in the construction and operation of its railroad, to cross its streets, and use Range street for its line of railroad, or spur track, for its main line to the Atlantic Coast Line Railroad. It is further agreed that the town of Dothan will exempt the said railroad company from all license and taxes for the term of five years. The said banks do not assume liability on this contract, except in so far as the same relates to the deposit of said money in its said bank separately, and are not held responsible for that part of this contract which refers to lights, water, license, taxes, and streets. This contract is made with the various subscribers of the said sum of $25,000; and, in case the said Enterprise Lumber Company, its agents or assignees, shall fail to perform its contract, the said banks shall refund the said amounts subscribed by them without interest. This contract is signed and sealed, on this, the 2d day of June, 1905, in triplicate—one copy for the Enterprise Lumber Company and for each of the banks—and becomes binding upon all the parties hereto instantly upon

the said $25,000 being deposited in the said banks according to the tenor of this contract and the passing and approval of the said ordinances by the town of Dothan."

## Exhibit B.

"It is agreed, and this agreement forms a part of this contract, that the said Enterprise Lumber Company guarantees that its said railroad to be built under this contract shall give to the town of Dothan no higher rates of freight than other well-regulated railroads and well-operated railroads give to other towns similarly located. The meaning of this is that the rate shall be no higher to Dothan than to a city or town of similar size with equal facilities and of a similar distance from the port. It is agreed that the foregoing forms a part of the contract theretofore signed and delivered on the 2d day of June, 1903, between the parties hereto, and is effective in accordance with the said contract heretofore signed and delivered."

## Exhibit C.

"Dothan, Ala., July 5, 1905.

"Received of the Enterprise Lumber Company the following sums of money from the following parties: R. H. Walker, $100; H. A. Pearce, $250; Malone & Sons, $5,000; J. T. Fowler, $25; H. Watford, $50; W. W. Whiddon, $25; J. T. Thrasher, $400; B. G. Farmer, $2,500; J. E. Wise, $50; Ed Nix, $100; R. C. Granberry, $25; W. M. Hunter, $200; B. Faulk, $50; A. D. Whiddon, $25; T. M. Espy, $500; N. B. Crawford, $250; W. S. Wilson, $250; J. U. Cureton, $500; E. R. Porter, $500; Reid & Hill, $100; D. C. Carmichael, $1,000; D.

[Enterprise Lumber Co., et al. v. First Nat. Bank.]

Douglas, $50; John and J. G. Sanders, $1,000; J. R. Young, $100. Total, $13,050. The said foregoing amounts are to be paid out by this bank in accordance with a contract made by said foregoing parties with the said Enterprise Lumber Company, on the 2d day of June, 1905."

CANDLER, THOMSON & HIRSCH, and PHARES COLEMAN, for appellant. The averment of an affirmative fact in a bill in equity which is essential to the relief prayed for must be proved in order to entitle the complainant to the relief asked for; such averments cast upon the complainant the burden of proving the fact so alleged.—18 Cyc. 371; *Lehman v. McQueen,* 65 Ala. 570; *Wolfe v. Nall,* 62 Ala. 24; *McRae v. McDonald,* 57 Ala. 423; *Marlowe v. Benagh,* 52 Ala. 112; *Hawes v. Brown,* 75 Ala. 385; *Wilkinson v. Searcy,* 74 Ala. 243; *Evans v. Winston,* 74 Ala. 349; *Pruitt v. Holly,* 73 Ala. 369. The failure of a complainant in a bill in equity to prove the essential averments of his bill defeats his right to the relief prayed for.—*Hughes v. Hughes,* 87 Ala. 655; *Lehman v. McQueen,* 65 Ala. 570. The essential elements of a bill of interpleader are four: (1) The same thing, debt or fund must be claimed by each of the parties against whom the relief is sought; (2) all adverse titles or claims must be dependent or derived from a common source; (3) the person asking the relief must not have or claim any interest in the subject matter; (4) Complainant must have incurred no independent liability to either of the claimants.—4 Pomeroy Eq. Juris., sec. 1322, et seq.; *Gibson v. Goldthwaite,* 7 Ala. 281; *Conley v. Ala. Gold Life Ins. Co.,* 67 Ala. 472; *Kyle v. Mary Lee Coal & R. Co.,* 112 Ala. 606; *Third Natl. Bk. of Boston v. Skillings,* 132 Mass. 410; *Cross v. M. & O. R. R. Co.,* 96 Ala. 447; Fletcher's Eq. Pl. & Pr. Jrs., 452-4

and notes; *Conn. Mutual L. I. Co. v. Tucker,* 23 R. I. 1; 91 Am. St. Rep. 590; Note 593; *City of Mt. Pelia v. Capital Savings Bank,* 75 Vt. 433; 98 Am. St. Rep. 834. The inflexible rule to justify an interpleader is that the thing or fund to which the parties defendant make claim must be one and the same thing; that is, it must be identical. Where the claims made by the defendants are of different amounts they never can be identical.— 4 Waites on Actions & Defenses, 153; 11 Enc. of Pl. & Pr., 453; *Pfister v. Wade,* 56 Cal. 43; *School District v. Weston,* 31 Mich. 85; *Glyn v. Duesberry,* 11 Sim. 139; *Diplock v. Hammond,* 27 Eng. L. & E., 202. A bill of interpleader will not lie to compel parties claiming a particular fund to interplead and settle the question of right to the fund between themselves where the plaintiff is fully advised of the grounds of the claims of the parties defendant, as well as the nature and extent of his liability to each. This is true, because being thus in possession of requisite knowledge, it devolves upon the complainant to determine to which of the claimants he should make the payment.—*Morgan v. Filmore,* 18 Abb. Prac. 217; *Trigg v. Hitz,* 17 Abb. Prac. 436; *Shaw v. Koster,* 8 Page (N. Y.) 339; *Pfister v. Wade,* 56 Cal. 43; *Parker v. Barker,* 42 N. H. 78; *Hechmer v. Gilligan,* 28 W. Va. 750. A bill of interpleader can not be sustained when it is shown that as to either of the defendants the plaintiff is a wrongdoer.—*Conley v. Ala. Gold Life Ins. Co.,* 67 Ala. 472; *Crane v. Burntrager,* 1 Ind. 165; *Mount Holly, etc., Turnpike Co. v. Ferree,* 17 N. J. Eq. 117; *Shaw v. Koster,* 8 Paige (N. Y.) 339; *Fulton Bank v. Chase,* (Supreme Ct.), 6 N. Y. Supp. 126; *American, etc., Tel Co. v. Day,* 52 N. Y. Super. Ct. 128 *Dodge v. Lawson,* 22 Civ. Pro. Rep. (N. Y.) 112; *McWhorter v. Hatfield,* 40 Ga. 269.

[Enterprise Lumber Co., et al. v. First Nat. Bank.]

ALBERT E. PACE, for appellee. Interpleader was the proper remedy.—*Wheeler v. Armstrong*, 164 Ala. 452; *Kyle v. Mary Lee Co.*, 112 Ala. 606; *Cross v. M. & C. R. R. Co.*, 96 Ala. 408; *Conley v. A. G. L. I. Co.*, 67 Ala. 470; 3 Pom. Eq., secs. 1322-26; 11 Enc. P. & P. 444. The complainant is not robbed of his remedy because several claimants claim different portions of the fund. —98 Am. St. Rep. 834; 1910 Ann., vol. 8; 120 S. W. 543; 92 Ark. 446. The Enterprise Lumber Company is estopped from disputing the equity of the bill for the right of interpleader.—*Wheeler v. Armstrong, supra.*

DE GRAFFENRIED, J.—The reporter will set out in his report of this case Exhibits A, B, and C, to the bill of complaint.

It will be seen from Exhibit A, above referred to, that the Enterprise Lumber Company had, when the said contract was made, in contemplation the building of a railroad from Dothan, Ala., to some deep-water harbor cn the Gulf of Mexico and that, before undertaking the work, it was desirous of obtaining, and did obtain, from the citizens of Dothan, and from the city of Dothan, certain subscriptions in money, and certain valuable concessions. It will also be seen from Exhibit C that the contemplated $25,000—referred to in Exhibit A— was raised through subscriptions of certain named citizens, and that something over one-half of that sum was deposited in the First National Bank of Dothan. It will be seen also from said Exhibit A that it was understood that a part of the money subscribed was to be paid when the contemplated railroad was completed from Dothan to the Pensacola & Atlantic Division of the Louisville & Nashville Railroad.

After making the contract, of which Exhibit A is a copy, the Enterprise Lumber Company proceeded to

construct said railroad, and when the road had been completed to the Pensacola & Atlantic Division of the Louisville & Nashville Railroad it claimed, and was paid, that part of the money to which it was then, under the terms of said Exhibit A, entitled. The Lumber Company then proceeded with the work, and finally completed the railroad to a point on St. Andrews Bay, which bay is, in fact, a part of the Gulf of Mexico. When this was done, the Lumber Company claimed that it had fully performed its obligations as fixed by the contract of which Exhibit A is a copy, and claimed the balance of the said fund remaining in the hands of the said First National Bank of Dothan. Nearly all of the subscribers to said fund—their names are set out in Exhibit C to the bill of complaint—thereupon claimed that said Lumber Company had not complied with the terms of said contract, and notified the said bank not to pay over the money remaining in its hands which they had subscribed to said fund. Thereupon the said First National Bank of Dothan paid into court that part of the fund, i. e., $7,826.01, which represented the fund remaining in its hands, which had been subscribed by those parties who had notified it not to pay the remainder of their said subscriptions to said Lumber Company, and filed the present bill.

The bill sets up the facts in extenso, makes the Lumber Company and the other claimants of said fund respondents thereto, alleges that the complainant has no interest in said fund, and prays that the said Enterprise Lumber Company and the other respondents to the bill of complaint be required to interplead as to the said sum so on deposit with the complainant, and under appropriate orders of the court that the respective rights of the several respondents to said sum be adjudicated and determined by said court. The bill—or rather the

bill as amended—is sworn to, and the affidavit contains the usual and necessary statements that the allegations of the bill are true, that it is not filed by the complainant to delay the payment of the sum so held by it, and that the complainant is not in collusion with any of the respondents, but that it is filed by the complainant of its own accord for the purpose of obtaining the relief sought, and not for the purpose of giving one of the claimants an advantage over any of the other claimants.

1. In order to maintain a bill of interpleader the complainant must allege in his bill, and show by his proof, that the subject of the rival claims is, in fact, claimed by both or all the rival claimants; that all the rival claims are through one common source; that the complainant does not have or claim an interest in the subject of dispute; and that he has incurred no independent liability to either of the claimants, but that he is in a position of absolute indifference as a mere stakeholder. The common source of all the rival claims in this case is the contract of which Exhibit A is a copy. The rights of all the respondents to the fund in controversy grow out of, and are fixed by, the terms of that contract. If under the terms of the contract the Lumber Company itself is not entitled to the fund—if it has failed to carry out its contract—then the complainant holds the fund for the benefit of those who raised it and placed it in the bank. Their rights to the fund spring out of the failure of the Lumber Company to comply with the terms of the contract.

It is evident, also, that the complainant occupies a position of a mere stakeholder, and that it has not, under the terms of the contract to which we have above referred, when that contract is properly construed and the purposes for which it was entered into by the parties are considered, any interest whatever in said fund. It

is also evident that the complainant has not, within the true meaning of the law, incurred any liability to either one of the claimants. While it is true the fund was kept, not in a safety vault separate from the funds of the bank, but simply as other deposits subject to check, and for that reason became a mere debt of the bank, nevertheless the contract of which Exhibit A is a copy alone determines to whom that debt belongs; and, under the disputed issues of fact between the Lumber Company and the other claimants of the fund shown by the bill of complaint, it is for the courts, and not for complainant, except at its own peril, to determine those issues of fact. The complainant does not deny the existence of the debt, and as an evidence of good faith pays the money into court. The trouble with complainant is that, owing to the rival claims of the respondents, it cannot pay that debt, or any part of it, to any one of the respondents except at its own peril.

2. It is, however, earnestly insisted that, as the respondents who deny the Lumber Company's right to the fund each claims, in severalty, only a portion of the fund, it cannot therefore be said that the parties respondent make claim to one and the same thing. Says the appellant Lumber Company: "Where the claims made by the defendants are of different amounts they never can be identical." That is to say, that while the Lumber Company claims the whole amount of the fund, no other respondent claims the whole, but only a part of the fund, and that therefore the bill is without equity as a bill of interpleader. In other words, according to the contention of the Lumber Company, the complainant should have filed, not one bill of complaint to settle this entire controversy between the parties, but as many bills as there were rival claimants to parts of the fund, although such rival claimants, in the aggregate, claim

the whole fund and claim it through one contract, of which Exhibit A is the written memorial.

Equity abhors a multiplicity of suits and undertakes to settle all disputes about any one matter in one suit, when under its rules, reasonably interpreted, this can be done.—Sims Chancery Practice, p. 101, § 159.

The above contention of the Lumber Company has, in reality, for its basis a statement in *Glyn v. Duesberry,* 11 Sim. 139, 148, in which Shadwell, V. C., said: "Where the claims made by the defendants are of different amounts they can never be identical." This quoted sentence has been much criticized, and is not only opposed to reason, but to the great weight of modern authority. Commenting on the quoted sentence, Mr. Pomeroy says: "Another insistence of difference in the amounts claimed by the different defendants, where the debt or duty may still be the same, occurs in cases where, a fund being in plaintiff's hands, the whole of it is claimed by one defendant and parts of it by others. In regard to such cases, Christiancy, J., said, in *School District v. Weston,* 31 Mich. 85, 'Upon the great weight of authority, both English and American, a much more liberal and reasonable rule has been established, and bills of interpleader have been frequently maintained, where the several claimants, instead of claiming the whole fund or matter in dispute, have claimed different portions of the fund, when the aggregate of all the claims exceeded the full amount of the fund.' "—5 Pomeroy, Equity Jur. (Pomeroy's Equitable Rec. vol. 1), p. 73, § 45. See, further, on this subject *Packard v. Stevens,* 58 N. J. Eq. 489, 46 Atl. 250; *Chicago, Rock Island & Pacific Railway Co. v. Moore,* 92 Ark. 446, 123 S. W. 233; *Guess v. Stone Mountain Granite & Railway Co.,* 67 Ga. 215; *Fidelity, etc., Ins. Co., v. Savings Bank,* 110 Ill. App. 92.

In our opinion the bill of complaint was not subject to the demurrer which was interposed to it.

3. The position assumed by the Lumber Company that the amount due the respondent subscribers to the fund if they are entitled to recover the fund, does not equal the amount admitted to be due and paid into court does not appear to be sustained by the facts. The mere fact that after the bill of complaint was filed and the money paid into court some of the subscribers withdrew their claim to the fund can, in no way, affect the equity of the bill of complaint. As to such subscribers the chancellor made an appropriate order authorizing the complainant to pay the part which they claimed to the Lumber Company. Those subscribers and the parts of the fund claimed by them have simply disappeared from this litigation.

4. It appears that a few of the subscribers to the said fund were interested in, or customers of, a bank other than the First National Bank of Dothan, and that the First National Bank of Dothan permitted those subscribers to place their money deposit with the said bank in which they were interested or of which they were customers. The Lumber Company advances this fact as an argument in support of its theory that the complainant has failed to prove the allegations of its bill of complaint. The mere fact that the First National Bank of Dothan permitted some of the money, which it had acknowledged as a deposit with it, to be actually deposited in some other bank is a matter of which the Lumber Company in this proceeding certainly has no right to complain. We have already said that the deposit of the fund in the First National Bank of Dothan was not a special deposit. It was a general deposit and to the knowledge of all the parties went into, and was commingled with, the general funds of the bank. The

thing in litigation in this case is a debt due by a bank to a depositor, and the only question is, to whom or to what persons does this debt belong?

5. We have above discussed the only questions which can prove of interest. Counsel for the Lumber Company undertake, in several ways, to show that the complainant has failed to sustain by sufficient evidence the material allegations of its bill of complaint. These arguments of counsel involve only a discussion of the facts, and we do not deem it necessary to reply to them. It is sufficient for us to say that, in our opinion, the complainant sustained by its evidence the material allegations of the bill of complaint, and that the decree of the court below is free from error.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.